IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EAST BROOKS BOOKS, INC. d/b/a/ GETWELL BOOKMART and AIRPORT ADULT THEATRE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 08-2101-STA |
| SHELBY COUNTY, TENNESSEE, and MEMPHIS, TENNESSEE, | ) ) ) ) | |
| Defendants. | ) | |

**ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiff's Appeal of and Objections to the Magistrate Judge's Order Denying the Motion for Preliminary Injunction, (D.E. # 32), filed on May 9, 2008. Defendants Shelby County, Tennessee and Memphis, Tennessee, and Intervenor Attorney General of the State of Tennessee, Robert E. Cooper, Jr., ("Attorney General") filed their Response in Opposition to Plaintiff's Objections (D.E. # 34) on May 23, 2008. For the reasons set forth below, the Court affirms the Magistrate Judge's Order Denying Plaintiff's Motion for Preliminary Injunction.

1

## BACKGROUND

Plaintiff East Brooks Books, Inc., d/b/a Getwell Bookmart and Airport Adult Theatre ("Plaintiff") seeks a preliminary injunction to prevent the enforcement of the Tennessee Adult-Oriented Establishment Registration Act (the "Act"), Tenn. Code Ann. §§ 7-51-1101 et seq., in Shelby County, Tennessee, (adopted as Ordinance No. 344). The Act became effective in Shelby County January 1, 2008, and would have been enforced following a one-hundred-twenty day grace period which ended April 30, 2008. This suit is one of two cases pending in this District, the other being *Entertainment Productions, Inc., et al. v. Shelby County et al.*, case no. 08-2047, Judge Bernice B. Donald, presiding, where adult-oriented businesses are challenging the Act. In both cases plaintiff-businesses have sought a preliminary injunction pending the trial on the merits.

Plaintiff operates bookstores which sell sexually-oriented material and restrict admission to adults only. Pursuant to FRCP 65(a), Plaintiff seeks to enjoin enforcement of the Act to preserve the status quo until the merits of the case can be decided. District Judge J. Daniel Breen referred the Motion to the Magistrate Judge for a hearing and report and recommendation. The Magistrate Judge conducted a hearing on the Motion on April 17, 2008, and issued the Order Denying the Motion for Preliminary Injunction (D.E. # 31) April 30, 2008. Plaintiff timely filed an appeal and objections to the Magistrate Judge's Order to which Defendants and Intervenor have responded in opposition. By Order of the Court, this case was reassigned on May 21, 2008, from Judge J. Daniel Breen to Judge S. Thomas Anderson for all further proceedings.

In the Order Denying the Motion for Preliminary Injunction, the Magistrate Judge concluded that the balance of factors to be weighed in determining whether an injunction should issue did not favor Plaintiff. In considering Plaintiff's likelihood of success on the merits in this case, the Magistrate Judge concluded that Plaintiff had not demonstrated a strong likelihood of success on its claim that the Act's definition of "adult cabaret" was facially overbroad. The definition of "adult cabaret" was susceptible to a narrowing construction.[1] Likewise, the Magistrate Judge also found Plaintiff's equal protection and due process contentions unpersuasive. Plaintiff was unlikely to prevail on the merits of its equal protection claim because the Act's definition of "adult bookstore" and the provision restricting admission to minors furthers a substantial governmental interest. Nor was there evidence of an impermissible motive on the part of Defendants. Furthermore, the Act's definitions did not violate due process guarantees because restricting admission to certain businesses to adults is rationally related to a legitimate governmental interest. The Court pointed out that there are, in fact, other laws that prohibit providing sexually-oriented materials to minors. The Court concluded that even if facts developed at trial showed otherwise, this aspect of the definition of "adult bookstore" was susceptible to a narrowing construction.

---

[1] In the related case of *Entertainment Productions*, the plaintiffs actually appear *prima facie* to be "adult cabarets" as defined in the Act. In the instant case, the Magistrate Judge found that Plaintiff East Brooks Books, Inc. is an adult bookstore, not an "adult cabaret," for purposes of the Act. Order Denying Mot for Prel. Inj., Apr. 30, 2008. Nevertheless, Plaintiff attacks the Act's definition of "adult cabaret" as facially overbroad and unconstitutional as applied to its adult bookstores. Rather than conduct a separate analysis on this issue, the Magistrate Judge deferred to the ruling found in Judge Donald's Order Denying Motion for Preliminary Injunction (D.E. # 38) in *Entertainment Productions*: "The Court believes that decision is best left for Judge Donald, as the plaintiffs in the case pending before her are adult cabarets and she has conducted a hearing on the matter and received evidence on the issues."

The Magistrate Judge's Order went on to analyze Plaintiff's arguments that the Act's penalty provisions are an unconstitutional prior restraint and violate due process. The Court ruled that Plaintiff lacked standing to challenge the Act's penalty provisions because it had not applied for or received a licence or any employee permits under the Act let alone been charged with a violation of the Act which would subject it to the Act's penalty provisions. Thus, the Court declined to consider the merits of Plaintiff's attacks.

Next, the Magistrate Judge rejected Plaintiff's arguments that the Act's prohibition on the sale, use, or consumption of alcoholic beverages is not narrowly tailored. Applying rational basis scrutiny, the Court concluded that Plaintiff had not demonstrated that the Act's prohibition was unreasonable and not rationally related to a legitimate governmental interest. On the contrary, Defendants cited the adverse secondary effects associated with adult bookstores. The Court also rejected Plaintiff's argument that the Act imposed strict liability on the owners of adult bookstores for the negligent acts of their employees where alcohol is consumed in violation of the Act. The Act provides that after an initial violation, owners may lose their licenses to engage in adult-oriented businesses for up to five years for subsequent violations. The Magistrate Judge determined that only those violations of which an owner knows or has reason to know are chargeable to the operator. Finally, the Court did not consider Plaintiff's claim that the prohibition on alcohol was unconstitutionally vague because Plaintiff did not develop the argument.

While the Court determined that Plaintiff was not likely to prevail on the merits of its constitutional claims, the Magistrate Judge nevertheless weighed the rest of the balancing factors for granting the preliminary injunction. The Court did find that a denial of the injunction would

4

result in irreparable harm to Plaintiff due to the First Amendment rights implicated. However, the Court found that the rest of the balancing factors weighed against granting the injunction. Considering the risk of substantial harm posed to others, the Magistrate found that the potential risk of adverse secondary effects associated with adult bookstores poses a greater risk to others than any risk posed to Plaintiff. The fourth and final factor weighed in favor of Defendants who argued that the public interest lies in preventing the adverse secondary effects created by adult-oriented establishments. Therefore, the Magistrate Judge determined that the balance of the factors weighed against the preliminary injunction.

In the related case of *Entertainment Productions*, Judge Donald has already denied a Motion for Preliminary Injunction seeking the same relief Plaintiff seeks in this matter. The *Entertainment Productions* plaintiffs have since filed an interlocutory appeal with the Sixth Circuit and sought to enjoin the enforcement of the Act pending appeal. On the day before the Magistrate Judge's Order issued in this case, Judge Donald granted Plaintiffs' Motion for Injunction Pending Appeal. Therefore, the *status quo ante* is preserved, and the enforcement of the Act is stayed until such time as the Sixth Circuit makes its ruling on the interlocutory appeal.

## **LAW**

The Court has authority pursuant to 28 U.S.C. § 636(b)(1)(C) to review *de novo* any

portions of a Magistrate Judge's report to which objections are made.[2] Furthermore, the Court must review all of the issues raised by Plaintiff's objections.[3] As the Magistrate Judge correctly set forth in his Order, the decision to grant a preliminary injunction is within the discretion of the district court.[4] A preliminary injunction is an "extraordinary remedy . . . which is to be applied only in the limited circumstances which clearly demand it."[5] The court may issue a preliminary injunction to preserve the status quo until a trial on the merits.[6] In determining whether a party is entitled to a preliminary injunction, courts must consider the following four factors: (1) whether the movant has demonstrated a substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction will cause substantial harm to others if issued; and (4) whether the public interest

---

[2] *U.S. v. Worley*, 193 F.3d 380, 383 (6th Cir. 1999). Although the Magistrate Judge's report is styled as an "Order", the Court will review it *de novo*. Where a Magistrate Judge issues an order on a non-dispositive motion pursuant to 28 U.S.C. § 636(b)(1)(A), the District Court will apply the more deferential clearly erroneous or contrary to law standard. However, for dispositive motions including motions for injunctive relief like the instant Motion, Magistrate Judges may only issue reports pursuant to subparagraph (B), which are reviewed *de novo*. *But cf. Gomez v. Martin Marietta Corp.*, 50 F.3d 1511 (10th Cir. 1995) (holding that decision to deny dispositive sanction alters standard of review); *see also* 7 James W. Moore et al., *Moore's Federal Practice,* ¶ 72.04[2.-4], at 72-66 (2d ed. 1994) ("[t]he penalty to be imposed, rather than the penalty sought by the movant, controls the scope of the magistrate's authority").

[3] *U.S. v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985) (citing *United States v. Raddatz,* 447 U.S. 667, 675-76, 100 S.Ct. 2406, 2412-13, 65 L.Ed.2d 424 (1980)).

[4] *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).

[5] *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (internal quotation marks and citations omitted).

[6] *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

is served by issuance of the injunction.[7] The court should not consider these factors prerequisites to granting a preliminary injunction but should balance the factors against each other.[8]

## ANALYSIS

### *I. Definition of "Adult Cabaret"*

In its Appeal of and Objections to the Magistrate Judge's Order (D.E. # 32), the Plaintiff first asserts that the Magistrate Judge erred in finding that the definition of "adult cabaret" was narrowly tailored and not overbroad. Plaintiff contends that the Act's definition of "adult cabaret" would bring within its scope businesses which are not adult-oriented where activities prohibited by the Act would be otherwise protected speech. For example, the Act's overbroad definition of adult cabaret would extend to mainstream artistic performances and establishments where a performer wear might a garment revealing parts of the performer's body prohibited in the Act. Defendants have failed to demonstrate that such exhibitions have any connection to the adverse secondary effects which the Act is aimed at preventing. Accordingly, the Act's definition of adult cabarets is overbroad and not narrowly-tailored.

The Court disagrees. As an initial matter, the Magistrate Judge did not conclude that the definition was not overbroad nor narrowly tailored but rather that the definition was susceptible to a narrowing construction. Judge Donald reached the same result in her Order Denying the Motion for Preliminary Injunction in *Entertainment Productions* upon which analysis the

---

[7] *Leary*, 228 F.3d at 736; *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884 (6th Cir. 2000).

[8] *Leary*, 228 F.3d at 736.

Magistrate Judge relied in his Order.[9]  Contrary to Plaintiff's assertion that the Magistrate Judge erred because Judge Donald's analysis "did not reach all of the issues raised by the Plaintiff in this case," the Court finds that Plaintiff has not presented any legal argument as to the overbreadth issue which was not also before Judge Donald in *Entertainment Productions*.  Judge Donald's well-reasoned opinion more than adequately disposed of Plaintiff's challenge to the Act as facially overbroad.  For that reason, the Magistrate Judge did not err in relying on Judge Donald's opinion to reach his conclusion.  Furthermore, this Court adopts Judge Donald's analysis and holding that the Act is not facially overbroad because "the Act's narrowing language is sufficient to confine the statute to those businesses that permanently feature sexually-oriented entertainment and give 'special prominence' to this type of entertainment."[10]  Therefore, the Court rules that Plaintiff has not demonstrated a strong likelihood of success on the merits of its facial overbreadth argument.

*II. Penalty Provisions of the Act*

The second error Plaintiff assigns to the Magistrate Judge's Order is its holding that Plaintiff has no standing to challenge the penalty provisions of the Act.  Without addressing the question of standing, however, Plaintiff restates its constitutional claims concerning the penalty provisions.  More specifically, according to Plaintiff, Defendants bear the initial burden to show that the Act is aimed at managing the adverse secondary effects of the speech and thus constitutes a permissible time, place, and manner regulation.  Plaintiff argues that Defendants

---

[9] *Entertainment Productions, Inc. v. Shelby County*, 545 F.Supp.2d 734, 748 (W.D. Tenn. 2008).

[10] *Entertainment Productions*, 545 F.Supp.2d at 748 (citing *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000)).

have not made the necessary showing. Likewise, the penalty provisions do not further a substantial government interest and do not leave the quantity and accessibility of speech substantially intact. Plaintiff further alleges that the penalty provisions mandating the revocation of a business license constitute a prior restraint on expressive conduct.

Unlike overbreadth claims where a plaintiff need not establish standing in order to mount a facial challenge to an act, Plaintiff must show standing to challenge the penalty provisions of the Act.[11] In the Order Denying the Motion for Preliminary Injunction, the Magistrate Judge ruled that Plaintiff lacked standing to challenge the penalty provisions of the Act. "Plaintiff has not applied for or received a license or any employee permits under the Act. Nor has Plaintiff been charged with any violation of the Act which would subject it to the Act's penalty provisions." The Court agrees that Plaintiff lacks standing to challenge the penalty provisions of the Act. Therefore, the Court need not reach Plaintiff's prior restraint arguments concerning the penalty provisions.

### III. Ban on Alcohol

The third error Plaintiff assigns to the Magistrate Judge's Order is its holding that the Act's prohibition on alcohol is narrowly-tailored and not overbroad. Making an argument which was not before the Magistrate Judge, Plaintiff insists that any alcohol-related regulation implicates First Amendment rights, and so the Act in this case should be subject to the strictest scrutiny instead of rational basis review. Finding that the Act involved no constitutional rights, the Magistrate Judge applied rational basis review and determined that the act was reasonable

---

[11] *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220, 227-8 (6th Cir. 1995) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596 (1990)).

and rationally related to a legitimate government interest.  As the Magistrate Judge correctly stated in his Order, "the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations."[12]  Furthermore, the Magistrate Judge pointed out that the cases addressing state law bans on alcohol in adult businesses involved establishments featuring nude dancing, not adult bookstores.

Beginning with *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390 (1972), the U.S. Supreme Court has continued to uphold state and local statutes banning nude dancing or other grossly sexual exhibitions in establishments where intoxicating liquors are sold.[13]  However, the Supreme Court has not specifically addressed the converse, which is presented in Plaintiff's assignment of error, and that is what level of scrutiny should apply to a state regulation prohibiting liquor sales or consumption on the premises of adult entertainment establishments. To further cloud matters, the Supreme Court in *44 Liquormart v. Rhode Island*, 517 U.S. 484, 515 (1996), expressly rejected the reasoning for its holding in *LaRue*, namely, that the states had authority under the Twenty-First Amendment to regulate nude dancing in establishments serving alcohol.  Without further explanation or analysis, the *Liquormart* Court nevertheless reaffirmed the holding in *LaRue* that states could exercise their general police powers and constitutionally regulate nude dancing on the premises of establishments serving alcohol.[14]

---

[12] *44 Liquormart v. Rhode Island*, 517 U.S. 484, 515 (1996).

[13] *City of Newport, Ky. v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383 (1986); *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599 (1980).  *But see*, *44 Liquormart v. Rhode Island*, 517 U.S. 484, 516 (holding that Twenty-First Amendment did not "qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment" and invalidating state ban on alcohol price advertising)

[14] Defendants point out this problem in their Response to the Motion for Preliminary Injunction, p. 19 (D.E. # 18-2) where Defendants contend that the question is moot in light of the

Faced with no specific rule, several Circuit Courts of Appeal have considered challenges to statutes similar to the one presented in this case where governments have attempted to prohibit alcohol in adult-oriented businesses. In each case the Circuit Courts have applied general First Amendment principles. Most, though not all,[15] interpret such regulations as content-neutral and rely on the intermediate scrutiny test set forth by the Supreme Court in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673 (1968).[16] The Seventh Circuit expressed some doubt as to whether an alcohol regulation aimed at adult-oriented businesses might be subject to the tests for time, place, manner regulations or the four-part *O'Brien* test for incidental limitations on First Amendment freedoms.[17] As a result, the Seventh Circuit employs intermediate scrutiny where the state or local government has shown that the regulation affecting adult businesses at issue is aimed at controlling the deleterious secondary effects of adult businesses; if the state cannot make such a showing, then the regulation is given strict scrutiny.[18]

---

adverse secondary effects cited. *See* note 21.

[15] *BZAPS, Inc. v. City of Mankato*, 268 F.3d 603 (8th Cir.), *cert. denied*, 536 U.S. 904 (2002) ("Because the Supreme Court has refused to reject the holding of *LaRue,* the case remains precedent that we are obliged to apply to similar cases. (citation omitted) As noted earlier, *LaRue* and the present case are virtually indistinguishable. The city's concern about the combination of alcohol and adult entertainment is not irrational, and the city is thus entitled under its police power to prohibit the sale of alcohol in a location that features adult entertainment"). Thus, in relying on the holding (though not the reasoning) in *LaRue*, the Eight Circuit seemed to apply only rational basis review.

[16] *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507 (4th Cir.); *Sammy's of Mobile, Ltd., v. City of Mobile*, 140 F.3d 993 (11th Cir. 1998), *cert. denied*, 529 U.S. 1052 (2000).

[17] *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 714 (7th Cir. 2003).

[18] *Joelner v. Village of Washington Park, Ill.*, 508 F.3d 427, 431-32 (7th Cir. 2007) (applying strict scrutiny where alcohol ban in newly established businesses intended to curb competition, not secondary effects); *Ben's Bar*, 316 F.3d at 722-23 (applying intermediate scrutiny where alcohol ban on premises of adult-oriented businesses directed at adverse

11

Like most of the Circuits which have considered the proper standard to apply to similar regulations, the Sixth Circuit applies intermediate scrutiny and the four-part *O'Brien* test where the regulation is content-neutral.[19] In *Hamilton's Boggarts*, the Sixth Circuit reversed the lower court's denial of a preliminary injunction and remanded where the lower court relied on *LaRue*'s holding that the Twenty-First Amendment gave the state of Michigan greater authority to regulate expressive conduct wherever liquor was sold.[20] Therefore, this Court must overrule the Magistrate Judge's Order to the extent that it applied rational basis scrutiny to the Act.[21]

Next, in order to determine whether intermediate or strict scrutiny should apply, the Court must consider whether the Act is a content-neutral or content-based regulation. The distinction is critical to the Court's analysis. Should the Court find that the regulation is content-based, then it is considered "presumptively invalid and subject to strict scrutiny."[22] There the state must show that its regulation serves a compelling state interest and is narrowly tailored to achieve that interest.[23] However, should the Court find that the regulation is content-neutral,

---

secondary effects).

[19] *Hamilton's Boggarts, Inc. v. Michigan*, 501 F.3d 644 (6th Cir. 2007).

[20] *Id.* at 652.

[21] The Court also disagrees with Defendants' claim that the Twenty-First Amendment makes the regulation of alcohol "entirely a state-law concern" and that consequently the Act is subject only to rational basis review. Def.'s Response to Mot. for Prelim. Inj., 18.

[22] *Id.* (citing *City of Los Angeles v. Alameda Books*, 535 U.S. 425, 434, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002)).

[23] *Id.* at 653 (citing *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (quotation omitted)).

then the regulation must meet the intermediate scrutiny standard in the four-part *O'Brien* test where the Court must decide whether: (1) the regulation is within the constitutional power of the government to enact, (2) the regulation furthers an important or substantial government interest, (3) the government interest must be unrelated to the suppression of free expression, and (4) the restriction must be no greater than is essential to the furtherance of the government interest.

The Sixth Circuit has explained that a regulation was content-neutral if the terms of the regulation target conduct alone but content-based if they are directed at limiting availability of adult-oriented entertainment.[24] In *Hamilton Boggart's*, the state of Michigan sought to prohibit entities with liquor licenses from allowing exotic dancers to perform fully nude, or mimick sexual acts, on stage. The Circuit Court never reached the question of which standard of scrutiny to apply to the Michigan regulation because the state failed to articulate what its state interest in the law was. Nevertheless, the Sixth Circuit did note that the state's burden to show its interest in a regulation "would not be a difficult one to meet."[25] At the same time, the Court also warned that the requirement is "not toothless, and requires **some** showing of an important or substantial interest that the regulations are essential to address."[26]

---

[24] *Hamilton's Boggarts*, 501 F.3d at 653 (citing *City of Erie v. Pap's A.M.*, 529 U.S. 277, 293, 296-97, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), and *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)). To highlight the lack of guidance on which standard of scrutiny should apply, the Sixth Circuit noted that in *Pap's A.M.* only a plurality of four Justices applied the *O'Brien* intermediate scrutiny test.

[25] *Id*. at 653.

[26] *Id*. (quoting *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 664, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)). The Fourth Circuit has found that the state's concern to mitigate adverse secondary effects attending adult-oriented establishments need not even be the predominant goal of a regulation very similar to the one at issue in this case. *Carandola*, 303 F.3d at 515 (4th Cir.) (applying intermediate scrutiny where state showed that secondary effects were one reason for regulation but not even predominant reason)).

In light of those principles, the Court finds that the Act is content-neutral, and so intermediate scrutiny should apply. Defendants have made more than "some" showing that the Act was passed to serve Shelby County's important interest in curbing the adverse secondary effects associated with adult businesses. For example, in the preamble to Shelby County Ordinance's Adopting the State Adult-Oriented Establishment Registration Act of 1998, the Shelby County Board of County Commissioners reviewed and adopted the findings of ten separate reports, statistical compilations, and other data documenting the adverse secondary effects connected to adult businesses in Memphis and Shelby County.[27] Among those reports cited were the state legislature's findings in enacting the Act itself.[28] Defendant Shelby County found that the cited "negative secondary effects constitute a harm that the County has a substantial government interest in preventing and/or abating."[29] Therefore, the Court concludes

---

[27] Pl.'s Complaint, ex. A. The reports include "The Location and Land Use of Identified Sexually Oriented Businesses in Memphis"; "The Geospatial Analysis of Crime Incidents and Arrests Around Sexually Oriented Businesses"; "Best Practice Number 15 Examining the Impact of Sexually Oriented Businesses on Crime in Memphis, Tennessee"; "Regulating Adult Oriented Establishments"; "Addendum to Best Practice Number 15"; a letter summary of illegal activity from District Attorney General William L. Gibbons; "Memphis Alcohol Commission and Adult Entertainment Report"; summary report of citations for violations of Memphis City Code, 4-82, largely at Memphis adult cabarets; and a report regarding the adverse health effects of activity commonly occurring in adult bookstores.

[28] Pl.'s Complaint, ex. A.

[29] *Id*. The Court notes that although the City of Memphis is a Defendant in this matter, Memphis does not have a similar ordinance adopting the Act within its jurisdiction. While the City of Memphis is located within Shelby County, Plaintiff's Complaint even noted that it was not clear whether the Act would be effective within the city limits. However, the Shelby County Ordinance (attached as ex. A to Pl.'s Complaint) indicates that there are no adult businesses in unincorporated Shelby County, only within the cities of Memphis and Millington. As Millington has its own adult business licensing ordinance, the Shelby County ordinance would not apply there. In fact, Defendants have stated that the City of Memphis is not a proper party to this case. *See* Defs.' Resp. Opp'n Mot. Prelim. Inj. ¶ 6. Therefore, the Court concludes that Defendant

that Defendants have met the burden to show that the Act is content-neutral, and so intermediate scrutiny applies. .

Having determined that the Act is content-neutral, the Court must now consider the four factors of the *O'Brien* test to determine whether the Act is constitutional. The first factor of the *O'Brien* test is whether the government regulation is within the constitutional power of the government to enact. In this instance, Shelby County's efforts to protect public health and safety are clearly within the county's police powers. The second factor is whether the regulation furthers an important or substantial government interest. The asserted interests of regulating conduct through a ban on alcohol in adult-oriented business and of combating the harmful secondary effects associated with alcohol in such establishments are clearly significant. It appears to the Court that Shelby County has reasonably relied on more than enough relevant information to demonstrate that the secondary effects pose a threat to the community. Because Shelby County has determined that crime and other public health and safety problems are caused by the availability of alcohol at adult-oriented establishments, a ban on alcohol at these businesses would further Shelby County's interest in preventing such secondary effects. The third factor requires that the government interest be unrelated to the suppression of free expression. In determining that the Act is content-neutral, the Court has already held that Shelby County's interest is unrelated to the suppression of free speech. Therefore, the third factor is met. The fourth and final *O'Brien* factor is that the restriction is no greater than is essential to the furtherance of the government interest. Here this requirement is satisfied as well. Just as the Supreme Court found in *Pap's A.M.*, the Act "regulates conduct, and any incidental impact on

City of Memphis need not make a separate showing of adverse secondary effects.

15

the expressive element of nude dancing is *de minimis*."[30] Accordingly, the Court concludes that Shelby County's ordinance is justified under *O'Brien*.

Having found that the Act is constitutional, the Court rules that Plaintiff has not demonstrated a strong likelihood of success on the merits of its First Amendment challenge to the Act's ban on alcohol.

### *IV. Equal Protection and Due Process Claims*

The final error Plaintiff assigns to the Magistrate Judge's Order is its holding that the Act's definition of "adult bookstore" violated Plaintiff's equal protection and due process rights.[31] The act defines an adult bookstore as an establishment which must (1) have as its "principal or predominant stock or trade" sexually-oriented materials, devices or paraphernalia and (2) restrict admission to adults only. As the Sixth Circuit has stated about the Act, "Most buyers, sellers and judges know what such materials are and who are adults and who are children."[32]

Plaintiff argues that the Act's use of the words "principal or predominant stock or trade" would permit a store to avoid licensing under certain circumstances. In Plaintiff's hypothetical example, a store could provide a small general merchandise area (comprising 5 % of its stock)

---

[30] *Pap's A.M.*, 529 U.S. at 301 (citing *Barnes v. Glen Theatre, Inc.,* 501 U.S., at 572, 111 S.Ct. 2456 (1991)).

[31] Plaintiff fails to address how the Magistrate Judge's Order erred in ruling that its due process rights were not violated. At any rate, the Court has reviewed the Magistrate Judge's ruling on the issue of due process and finds no error. Plaintiff's due process argument is unavailing. Therefore, the Court does not disturb that portion of the Magistrate Judge's Order.

[32] *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 441 (6th Cir. 1998).

open to the public and a much larger area with adult-oriented goods (making up the other 95 % of its stock) open to adults only. Such a store would not be subject to the Act because it is not open to adults only. Plaintiff takes exception to the Magistrate Judge's reliance on the legal reasoning in *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435 (6th Cir. 1998) ("Richland I") and *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570 (6th Cir. 2002) ("Richland II") where the Sixth Circuit found that the owners of adult bookstores are not a suspect class, applied rational basis scrutiny to the Act, and held that there was no equal protection violation. Plaintiff argues that *Richland I & II* cases are factually distinct from the case at bar; therefore, the same reasoning cannot apply.

The Court disagrees and adopts this portion of the Magistrate Judge's Order. The Magistrate Judge's Order cites several Sixth Circuit cases including *Richland I & II* in which the Circuit Court has been invited to find equal protection violations in cases involving regulations for adult-oriented businesses.[33] Each time the Circuit Court has unequivocally held that the owners of adult businesses are not a suspect class and any regulation naming them was subject to rational basis review barring some impermissible government motive behind the regulation. Applying the same standard to the case at bar, the Court finds that Plaintiff has not suffered a violation of its equal protection rights.

Plaintiff has made much of non-binding precedent from another Circuit; however, the Court finds those cases to be readily distinguishable. In his assignments of error, Plaintiff cites *Doctor John's, Inc. v. City of Sioux City*, 438 F.Supp.2d 1005 (N.D. Iowa 2006) in support of its equal protection claims. In *Doctor John's*, the Court found an equal protection violation in a

---

[33] In addition to *Richland I & II*, the Magistrate Judge's Order cited *Deja Vu of Cincinnati, L.L.C. v. Union Tp. Bd. Of Trustees*, 411 F.3d 777 (6th Cir. 2005).

Sioux City, Iowa-ordinance regulating "sexual device shops." More specifically, the ordinance had certain "triggering" provisions that activated its licensing requirements. The *Doctor John's* Court found that under the ordinance, any business that "'regularly features' even *one* 'sexual device'" required a license from the city.[34] However, the ordinance also provided exemptions for "'any pharmacy, drug store, medical clinic, or any establishment primarily dedicated to providing medical or healthcare products or services,' and still more critically here, any 'commercial establishments which do not restrict access to any portion of their premises by reason of age.'"[35] Another business in town, Spencer's Gifts, met the ordinance's definition, according to the *Doctor John's* Court, as a "sexual device shop" but was exempt from the license requirement because Spencer's Gifts was open to minors as well as adults.[36] The Court held that this distinction was irrational and violated the equal protection rights of the *Doctor John's* plaintiff.[37]

In contrast the ordinance in this case provides no triggering tests to determine what businesses are covered under the Act such as measuring what percentage of a business' merchandise is adult-oriented. Instead the Tennessee Act simply applies to businesses whose "principal or predominant stock or trade" is sexually-oriented materials, devices or paraphernalia, and which restrict admission to adults only. Like the Sixth Circuit, this Court finds that under this Act, "Most buyers, sellers and judges know what such materials are and

---

[34] *Doctor John's, Inc.*, 438 F.Supp.2d 1022.

[35] *Id*.

[36] *Id*. at 1050-51.

[37] *Id*. at 1051-52.

18

who are adults and who are children." Businesses whose "principal or predominant stock or trade" is adult-oriented are readily definable for purposes of the Act without recourse to percentages or triggering events. Once again this Court cites Judge Donald's well-reasoned analysis of the Act's use of "principal or predominant" with regard to the Act's definition of "adult cabaret" and "adult entertainment:" "the Act's narrowing language is sufficient to confine the statute to those businesses that permanently feature sexually oriented entertainment and give "special prominence" to this type of entertainment."[38] Likewise, this Court finds that the Act's narrowing language is sufficient to confine the statute to those bookstores that permanently feature sexually-oriented media and give "special prominence" to this type of merchandise.

Therefore, the Court adopts the Magistrate Judge's Order holding that Plaintiff has not demonstrated a strong likelihood of success on the merits of its equal protection claim.

As for the other showings required for the preliminary injunction, Plaintiff has made no objection to the Magistrate Judge's Order, and the Court finds no error in the Magistrate Judge's analysis and agrees that the Motion for Preliminary Injunction should be **DENIED**.

## CONCLUSION

Having reviewed the Magistrate Judge's Order *de novo*, and the entire record of the proceeding before the Magistrate Judge, the Court hereby affirms the Magistrate Judge's Order Denying the Preliminary Injunction and modifies the Order in so far as it applied the rational basis standard to Plaintiff's contention that the Act's ban on alcohol violated the First

---

[38] *Entertainment Productions*, 545 F.Supp.2d at 748 (citing *Schultz v. City of Cumberland*, 228 F.3d 831 (7th Cir. 2000)).

Amendment. Therefore, Plaintiff's Motion for Preliminary Injunction is **DENIED**.

Furthermore, in its prayer, Plaintiff requests that the Court consider ordering a stay pending its imminent appeal of the Court's Order Denying the Preliminary Injunction. Plaintiff and Defendants point out that Judge Donald issued an Order Granting Motion for Injunction Pending Appeal on April 29, 2008. As a practical matter then, the Act is enjoined from any enforcement until the Sixth Circuit rules on the appeal in *Entertainment Productions*. Still Plaintiff requests an injunction from this Court pending appeal. Because of Judge Donald's Order in *Entertainment Productions* as well as the fact that Plaintiff has only indicated its intention of appealing this Court's instant Order, the Court finds that the Motion should be **DENIED** as moot.

**IT IS SO ORDERED**.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 23rd, 2008.